UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | MISC. ACTION |
| VERSUS | NUMBER: 93-3241 |
| DUREL MATHERNE | SECTION: "L"(5) |

**REPORT AND RECOMMENDATION**

At issue herein is the ranking of the lien of the United States against property owned by Durel Matherne. The facts herein are not in material dispute and the Court, therefore, sought briefs for consideration from all parties. An evidentiary hearing is not necessary.

Durel Matherne was sentenced on May 28, 1993 by the U.S. District Court, District of New Mexico, for violations of 18 U.S.C. §1014, i.e., making false statements to obtain a federally insured loan, and 18 U.S.C. §2. As part of his sentence, Matherne was ordered to pay restitution to the Federal Deposit Insurance Corporation in the amount of $ 287,831.63 in monthly installments of $4,798 until paid in full, together with a $100.00 special assessment. That judgment was transferred to the Eastern District

of Louisiana for enforced collection. (Rec. doc. 1). Accordingly, the United States filed a Notice of Lien, which was recorded on October 22, 1993 under Entry No. 89210 and recorded in the mortgage records of St. James Parish, State of Louisiana.

Durel Matherne and his wife, Nancy, subsequently filed a personal injury suit in the Civil District Court for the Parish of Orleans, No. 02-2548, arising out of an accident in which Matherne claimed damages. Representing the plaintiffs in that lawsuit was John H. Smith of the McKernan Law firm, Baton Rouge, Louisiana. A settlement of that litigation in the amount of $80,000.00 was arrived at with one of the defendants. For purposes of the current issue, it is undisputed that there is currently due and owing on Matherne's fine a sum in excess of the amount realized in settlement of the aforementioned litigation.

On December 7, 2004, the United States filed an Application for Writ of Continuing Garnishment under the Federal Debt Collection and Procedures Act, 28 U.S.C. §3205, to obtain property in which Matherne has a substantial nonexempt interest and which was in the possession, custody or control of the McKernan Law Firm, i.e., the aforementioned $80,000.00 settlement proceeds. (Rec. doc. 12). A Writ of garnishment was issued by this Court on December 14, 2004. (Rec. Doc. 12). In addition to the United States, the McKernan Law Firm and the Medical Center of Louisiana claim an interest in the settlement proceeds. (See rec. doc. 21). The United States provided notice of the Writ of Garnishment to both other claimants through their attorneys of record. (Rec.

2

docs. 13-16).

On February 5, 2005, the McKernan Law Firm filed an answer to the Writ of Garnishment in which it acknowledged possession of the funds in question. (Rec. doc. 17). In that answer, the McKernan Law Firm asserted a claim for attorneys' fees and expenses which it argued primed any lien held by the United States. (Id.). An answer was also filed on behalf of Mrs. Matherne, requesting that the Court recognize her interest in the settlement proceeds as exempt from the Writ of Garnishment and to determine her share of the funds. (Rec. doc. 18).

Although given an opportunity to file a brief pertaining to the ranking of its lien, the Medical Center of Louisiana has not made any further argument or cited the Court to any authority which would indicate that its position was higher than that of the McKernan Law Firm. The issue, therefore, appears to be whether the McKernan Law Firm or the United States has first preference to the fund of $80,000.00 generated in the settlement of the Matherne state court litigation.

As noted by the United States, as a general rule, the law in effect at the time of the sentencing of Matherne determines the applicable law for sentencing. Hughley V. United States, 495 U.S. 411, 413 n.1, 110 S.Ct. 1979, 1981 n.1 (1990). It is undisputed that the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§3663-3664, governs the restitution order in this case since it was in effect at the time of Matherne's conviction.

The VWPA permitted the United States to enforce restitution

3

orders by using the procedures available for the enforcement of criminal fines.  18 U.S.C. §3663(h)(1)(A).  At that time, Title 18 provided that "[a] fine ... is a lien in favor of the United States upon all property belonging to the person fined."  18 U.S.C. §3613(a).  The lien arises on the entry of judgment and is valid for twenty years or until the restitution is paid, remitted, or set aside.  18 U.S.C. §3613(a), (b).  Title 18 further provided that fines, including restitution orders, could be enforced through the use of specified provisions of the Internal Revenue Code. 18 U.S.C. §3613(c).  Thus, an order of restitution is a lien in favor of the United States on all of a defendant's property and rights to property as if it were a liability for unpaid taxes.

The priority of a federal tax lien in relation to the competing lien is governed by federal common law.  <u>United States v. National Bank of Commerce</u>, 472 U.S. 713, 722-23, 105 S.Ct. 2919, 2925 (1985).  Absent a provision to the contrary, the federal priority rule is that "the first in time is the first in right." <u>United States by and through I.R.S. v. McDermott</u>, 507 U.S. 447, 449, 113 S.Ct. 1526, 1528 (1993)(internal quotations and citations omitted).  This rule does, however, have exceptions.  For example, 18 U.S.C. §6323(b) provides certain exceptions under which liens under state law will have priority even if they arise after notice of the federal tax lien has been filed.  The exception at issue here which potentially provides rights to the McKernan Law Firm is 18 U.S.C. §6323(b)(8), which, the Government acknowledges, provides "superpriority" status for attorneys' liens under some

circumstances. <u>Centex-Landis Construction Co., Inc. V. United States</u>, 2000 WL 1039475 at *2 (E.D. La. 2000).

The Government has advised that cases interpreting Section 6323(b)(8) have held that an attorney seeking to benefit from superpriority status must show that: (1) his efforts obtained a judgment or settlement of a claim that created a fund; (2) local law would recognize the existence of the lien; and (3) the amount of the lien reflects the extent to which the attorneys' efforts reasonably contributed to the award. <u>United States v. New York State Dep't. of Taxation and Finance</u>, 138 F.Supp.2d 392, 397 (W.D. N.Y. 2001), <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>United States v. Ripa</u>, 323 F.3d 73 (2nd Cir. 2003).

Here, the McKernan Law Firm basically argues that it falls within the purview of the above exception. Clearly, the Government's lien was first in time; the contract which Matherne executed with the McKernan Law Firm did not come into existence until December 10, 2001. However, the Government concedes that the McKernan Law Firm did, in fact, perform services that resulted in the generation of the settlement fund at issue. Therefore, the first prong of the tripartite burden to establish preference by the McKernan Law Firm is not at issue here.

The Government does contest that the McKernan Law firm has presented sufficient proof to meet prongs two and three of the inquiry set forth above.

Under Louisiana law, there are two statutes governing the establishment and ranking of attorneys' fees but the one applicable

5

herein is LSA-R.S. 37:218.  It provides, in pertinent part, as follows:

> A.  By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property.  Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws.
> ...
>
> B.  The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

As noted in Roberts v. Hanover Insurance Company, 338 So.2d 158, 160 (La. App. 2nd Cir. 1976), the above statute protects an attorney in the recovery of his fee where he has a written contract granting him an interest in the subject matter of the suit, "which method is in addition to and supplemental to the privilege granted by LSA-R.S. 5001".[1]  And as further noted in Calk v. Highland Const. & Mfg., 376 So. 2d 495, 499 (La. 1979), the attorneys' fee contract does not have to be recorded to be effective.  For the attorney to succeed, he need only assert his claim in a proper proceeding prior to disbursement of the proceeds to a third party.  Selly v. Watson, 210 So.2d 113, 116 (La. App. 1st Cir. 1968).

---

[1] LSA-R.S. 9:5001 deals with the situation where an attorney has brought a matter to judgment as opposed to settling a matter as is the case herein.

Here, it is undisputed that the McKernan Law Firm had a written contract with Matherne.  It has been annexed to Rec. Doc. 23 as Exhibit A.  It is further undisputed that the lien of the McKernan Law Firm has been asserted before the funds in question have been disbursed to a third party.  Accordingly, the assertion of the lien is timely.  Lastly, the McKernan Law Firm has also annexed an itemized statement of expenses advanced by the firm which is likewise attached to Rec. Doc. 23 as Exhibit B.  Clearly, also the applicable state statute set forth above recognizes that "amounts advanced by the attorney to and on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association" are cognizable as part of the lien asserted.

Here the expenses alone, and not the legal fee, sought by the McKernan Law Firm exceed the amount of the settlement obtained.  The Government basically concedes that the McKernan Law Firm should be granted some type of a fee in priority to its lien.  But, it is argued that only something considered reasonable under Louisiana law should be given preference and priority.

As noted above, the out-of-pocket expenses set forth in the statement furnished by the McKernan Law Firm exceed the amount of the settlement proceeds.  There has been no argument by anyone that these amounts were not expended; nor is it suggested that they should not have been incurred.  Since "amounts advanced by the attorney to and on behalf of the client" are covered in the lien for attorneys' fees and since this amount alone exceeds the amount received in settlement, the Court need not proceed any further.

The Court finds that the McKernan Law Firm had a lien, in preference and priority to that of the United States, on the settlement proceeds obtained pertaining to the claim of Durel Matherne. The Court further finds that the full amount of the settlement funds held in escrow should be turned over to the McKernan Law Firm, to the exclusion of any claim by the United States based on its judgment of restitution against Matherne.

As noted earlier, the Medical Center of Louisiana has failed to actively pursue its lien. However, the Court notes that, pursuant to LSA-R.S. 9:4752, the privilege of an attorney has preference and priority to any claim by a healthcare provider for services rendered.

## **RECOMMENDATION**

It is recommended that the sum of money held in the trust account of the McKernan Law Firm, representing settlement funds obtained in connection with the litigation pertaining to Durel Matherne, be determined to be subject to a first lien by the McKernan Law Firm for fees and expenses incurred in connection with the handling of the matter entitled <u>Matherne, et al. vs. Brooks, et al.</u>, No. 02-2548 on the docket of the Civil District Court for the Parish of Orleans, superior to the lien asserted by the United States of America and the Medical Center of Louisiana.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

New Orleans, Louisiana, this 11th day of July, 2006.

_____ for
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE